# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **MARVIN JOHNSON, SR.,** | ) | **CASE NO. 1:17 CV 1332** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **STUART FRIEDMAN, *et al.*,** | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Marvin Johnson, Sr., filed this action under 42 U.S.C. § 1983 against Cuyahoga County Court of Common Pleas Judge Stuart Friedman, Cuyahoga County Assistant Prosecutor Patrick Lavelle, Defense Attorney Jaime Serrat, and Defense Attorney David Grant. In the Complaint (Doc. # 1), Plaintiff asserts the Defendants were not properly sympathetic to his heart condition during sentencing. He seeks immediate release from confinement and monetary damages.

## I. BACKGROUND

Plaintiff alleges he pled no contest on December 15, 2015 to two first degree felony drug offenses and a fifth degree felony for possessing criminal tools. His sentencing hearing was scheduled for January 25, 2016. He contends that earlier in January 2016, he went for his annual heart check up appointment. Plaintiff had previously been diagnosed with Wolf Parkinson White Syndrome which is a genetic disorder resulting in an extra electrical pathway

between the heart's upper and lower chambers. This can cause a rapid or irregular heart beat. He also learned his heart muscle had thickened causing him to experience heightened symptoms from the condition. His cardiologist referred him to a Cleveland Clinic surgeon who scheduled him for an ablation on February 5, 2016. The court continued his sentencing and scheduled a status conference on February 16, 2016 to assess his medical condition. Plaintiff's surgeon reported that the procedure had gone as planned, and the court determined Plaintiff's sentencing hearing could be set for February 14, 2016.

Plaintiff appeared in court on February 14, 2016 with his attorney, Jaime Serrat. Serrat presented letters from Plaintiff's cardiologist and surgeon indicating Plaintiff required follow up appointments with them in the next few months to determine if the surgery successfully resolved the condition. The court continued the sentencing until April 5, 2016.

Plaintiff attended his follow up visit with his surgeon and was informed that while the ablation was initially successful, his condition had recurred and he would need to return for another appointment in six weeks to evaluate the need for another surgery. Plaintiff indicates he contacted Serrat and asked him to get another, longer continuance of the sentencing hearing. Plaintiff alleges he and Serrat had an argument about filing the continuance. He claims Serrat told him to "stop playing the court, the judge, and the prosecutor know you are using this medical issue to manipulate the court." (Doc. # 1 at 7). Serrat also reminded him that the court had stated it would not grant any other continuances. Plaintiff's family retained David Grant to represent Plaintiff on March 30, 2016.

At the sentencing hearing on April 5, 2016, Grant offered letters from Plaintiff's cardiologist and surgeon indicating the need for a follow up appointment in six weeks to discuss the possibility of scheduling surgery in the future. The letters also indicated that Plaintiff's medical condition could not be managed by a general practitioner and must be managed by his Cleveland Clinic cardiologist and surgeon. The court stated to Plaintiff it would not continue the hearing without a surgery date. Plaintiff called his surgeon and explained the situation. His surgeon transferred him to the scheduling department. They stated they would do the best they could to schedule him promptly but they would have to get back to him within two to three days with a date. The court continued the hearing for three days, but then extended the continuance to May 19, 2016 because Grant was engaged in a capital murder trial. In that time period, Plaintiff learned that his second ablation was scheduled for July 22, 2016.

Plaintiff appeared for his sentencing on May 26, 2016. He presented correspondence from his cardiologist and his surgeon informing the court of the date of the second surgery. Assistant Prosecutor Lavelle objected to another continuance and insisted that the court impose sentence at the hearing, stating that if the procedure absolutely had to be performed, it can be done at the state's medical reformatory. The court proceeded with the sentencing and imposed a six year prison sentence. The court then stayed the execution of the sentence and placed Plaintiff on home detention with GPS monitoring, and supervised release. Plaintiff was scheduled to report for prison on August 1, 2016.

Plaintiff tested positive for marijuana use on July 14, 2016 and the court scheduled a bond hearing for July 25, 2016, three days after his ablation. His attorney appeared at the bond

hearing, but Plaintiff did not. His attorney presented letters from his cardiologist and his surgeon indicating Plaintiff had been released from the hospital the day after his procedure and would need a full week to recover at home. His doctors suggested he should return to the Cleveland Clinic for follow up visits in six to eight weeks. The court issued a capias for Plaintiff's arrest for failure to appear. Upon learning of the capias, Plaintiff's family assisted him with cutting off the GPS monitor. He was indicted on October 4, 2016 for disrupting public services and criminal damaging. Plaintiff was arrested on December 8, 2016 and placed in the Cuyahoga County Jail. He was convicted of the new charges and his sentence was increased to eight years in prison on February 13, 2017.

Plaintiff alleges his medical needs are not being met at the Lorain Correctional Institution. He states he has complained of severe headaches, periods of rapid heart beat, fatigue, numbness in his arms, shoulders, and fingers, elevated blood pressures and low heart rates. He has also had abnormal EKG tests suggesting his condition may have returned. He contends that the prison does not have an electrophysiologist or even a cardiologist on staff.

Plaintiff asserts Judge Friedman and Prosecutor Lavelle were deliberately indifferent to his serious medical needs by proceeding with his sentencing, scheduling a bond hearing three days after his surgery and issuing a capias for his arrest when he did not attend the hearing. He asserts Serrat and Grant violated his Sixth Amendment rights by not providing effective assistance of counsel. He seeks immediate release from prison and monetary damages.

## II.  STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a Defendant is immune from suit or when a Plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*.  The Court is "not bound to

accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. ANALYSIS

As an initial matter, both Judge Friedman and Assistant Prosecutor Lavelle are immune from damages. Judges are absolutely immune from civil suits arising from their actions while presiding over cases. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the Defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. *Stump*, 435 U.S. at 356-57. A judge will be not deprived of immunity even if the action he or she took was performed in error, done

maliciously, or was in excess of his or her authority. In this case, Plaintiff alleges Judge Friedman was not entirely sympathetic to his medical condition when setting court dates and considering mitigating evidence for failing to appear for a supervision violation hearing. These actions were taken when Friedman was acting in his capacity as a judge and were within the jurisdiction of the Common Pleas Court. He is absolutely immune from damages.

Prosecutors are also entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* These suits could be expected with some frequency, for a Defendant often will transform his resentment at being prosecuted into the attribution of improper and malicious motives to the state's advocate. *Imbler*, 424 U.S. at 424-25; *Skinner*, 463 F.3d at 525. Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the state's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Imbler*, 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). In this instance, Plaintiff alleges Lavelle was not sympathetic to Plaintiff's medical condition and insisted on proceeding with his sentencing even

though Plaintiff was scheduled for an ablation. This action was made in the course of his representation of the state. Consequently, Lavelle also is entitled to absolute immunity.

Finally, Defense Attorneys Jaime Serrat, and David Grant are not subject to suit under 42 U.S.C. § 1983. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). A public defender or a court-appointed defense counsel, while acting in that capacity, is not a state actor for purposes of § 1983. *Polk County v. Dodson*, 454 U.S. 312, 321 (1981).

### IV. CONCLUSION

Accordingly, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

**IT IS SO ORDERED**.

        /s/ Dan Aaron Polster    12/8/2017
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.